**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

FILED
Scott L. Poff, Clerk
United States District Court

By mgarcia at 9:45 am, Mar 04, 2020

WILLIE TOOMBS,

      Plaintiff,

    v.

ANDREW M. SAUL, Commissioner of Social
Security,

      Defendant.

CIVIL ACTION NO.: 5:18-cv-84

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Craig R. Petersen ("the ALJ" or "ALJ Petersen") in denying his claims for period of disability, disability insurance benefits, and supplemental security income. Plaintiff urges the Court to reverse and remand the Administrative Law Judge's decision. Doc. 17 at 28. Defendant argues the Commissioner's decision should be affirmed. Doc. 18 at 21. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter an appropriate judgment of dismissal.

## BACKGROUND

On September 22, 2014, Plaintiff filed applications for period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning on September 17, 2014 based on diabetes with neuropathy, lumber spine degenerative disc disease, cervical spine degenerative disc disease with C8 radiculopathy, left shoulder condition, diabetic retinopathy, and obesity. Doc. 11-8 at 2–11 (R. 384–93); Doc. 11-2 at 54 (R. 53). After his claim was initially denied and upon reconsideration, Plaintiff filed a timely request for a hearing.

Doc. 11-2 at 51 (R. 50).   On August 29, 2016, May 10, 2017, and February 14, 2018, ALJ

Petersen conducted video hearings at which Plaintiff appeared and testified from Waycross,

Georgia.   Id.   Charles K. Heartsill, a vocational expert, appeared at the hearing held on

February 14, 2018.   Id.   On April 16, 2018, ALJ Petersen issued a decision, finding Plaintiff not

disabled within the meaning of the Social Security Act.   Id. at 67 (R. 66).   The Appeals Council

denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became

the final decision of the Commissioner for judicial review.   Id. at 2–7 (R. 1–6).   Plaintiff, born

on January 1, 1974, was 44 years old when ALJ Petersen issued his final decision.   Id. at 67 (R.

66); Doc. 11-8 at 2 (R. 384).   He has a limited education and is able to communicate in English.

Doc. 11-2 at 65 (R. 64).

## DISCUSSION

### I.      The ALJ's Finding

Title II of the Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The Act qualifies the definition

of disability as follows:

> An individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy[.]

42 U.S.C. § 423(d)(2)(A).   Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.   20 C.F.R. §§

404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."   Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.   If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.   Id. at 140–41.   If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.   The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.   20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).   If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.   Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work.   Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).   A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."   Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).   If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience.   Phillips, 357 F.3d at 1239.   Disability benefits will be awarded only if the claimant is unable to perform other work.   Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine Plaintiff had not engaged in substantial gainful activity since September 17, 2014, the date Plaintiff alleges he became disabled.   Doc. 11-2 at 54 (R. 53).   At step two, ALJ Petersen determined Plaintiff had diabetes with neuropathy, lumber spine degenerative disc disease, cervical spine degenerative disc disease with C8 radiculopathy, left shoulder condition, diabetic retinopathy, and obesity, conditions considered "severe" under the Regulations because they "significantly limit the ability to perform basic work activities."   Id.   At the third step, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.   Id. at 54–55 (R. 53–54).   The ALJ found Plaintiff had the residual functional capacity to perform sedentary work, with the following exceptions: push/pull 10 pounds occasionally; stand/walk up to two hours of an eight-hour work day and sit for six hours of an eight-hour workday with normal breaks; use of a device to ambulate to and from the work area; occasionally climb stairs and ramps; never climb ladders or scaffolds; occasionally stoop, kneel, and crouch; never crawl; occasionally perform overhead work and use foot controls; frequent handling, fingering, and feeling; no work at unprotected heights or around other hazards; not perform work requiring peripheral vision on the left; no limitations in concentration, persistence, and pace; and no social deficits.   Id. at 55 (R. 54).   At the next step, the ALJ determined Plaintiff was unable to perform any past relevant work.   Id. at 65 (R. 64).   The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of table worker, loader, and taper, all of which are jobs at the sedentary, unskilled exertional level and which exist in significant numbers in the national economy.   Id. at 66 (R. 65).

## II.    Issues Presented

Plaintiff argues ALJ Petersen erred in admitting and giving any weight to Dr. Stephen Pappas' consultative report, while also denying Plaintiff the right to challenge this evidence, and in doing so, abridging his due process rights.   Doc. 17 at 2.   Plaintiff also asserts the ALJ erred in improperly discounting the medical source statement of his long-time neurologist, Dr. Nimi Patel.   Id.   Plaintiff maintains that, by discounting Dr. Patel, the ALJ incorrectly assessed Plaintiff's residual functional capacity.

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.   Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).   A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.   Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).   Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.   Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.   The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.   Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).   The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.   Dyer, 395 F.3d at 1210.   In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.   Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.   Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).   If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.   Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV.   Whether the Administrative Law Judge Violated Plaintiff's Due Process Rights Regarding Cross-Examination of the Consultative Examiner

Plaintiff's first enumeration of error concerns a consultative examiner, Dr. Pappas.   The ALJ conducted an initial hearing in this matter on August 29, 2016, and, following that hearing, sent Plaintiff to Dr. Pappas, a neurologist, for a consultative exam.   Doc. 11-3 at 8 (R. 102). Dr. Pappas examined Plaintiff and, on November 22, 2016, provided the ALJ with a completed "Neurological Questionnaire," doc. 11-14 at 47–50 (R. 985–88), and a completed "Medical Source Statement of Ability To Do Work-Related Activities (Physical)," doc. 11-14 at 51–57 (R. 989–95), and examination notes, doc. 11-14 at 58–60 (R. 996–98) (collectively identified as "Exhibit 44F").   Plaintiff's counsel concluded that Dr. Pappas' submissions contained inconsistencies and sought to subpoena Dr. Pappas for a deposition.   Doc. 11-3 at 8 (R. 102). The ALJ denied the request to subpoena Dr. Pappas and instead offered Plaintiff's counsel the

opportunity to submit written interrogatories, which the ALJ would then submit to Dr. Pappas.[1]
Id.  Plaintiff's counsel provided proposed interrogatories to the ALJ, and the ALJ sent the
interrogatories to Dr. Pappas.[2]  Dr. Pappas, however, failed to answer the interrogatories.[3]  At
the final hearing in this case on February 18, 2018, Plaintiff's counsel presented the issue to the
ALJ again, asking the ALJ to either order Dr. Pappas to answer the interrogatories, issue a
subpoena for Dr. Pappas' deposition, or exclude Exhibit 44F (Dr. Pappas' written submissions).
Doc. 11-2 at 86 (R. 85).  The ALJ rejected Plaintiff's counsel's arguments, concluding that Dr.
Pappas' consultative evaluation was so distant in time that another examination would be
required, which would cause undue delay, and, in any case, the ALJ determined Dr. Pappas was
not an essential witness.  Id. at 83–84 (R. 82–83).

In his decision, the ALJ noted Plaintiff's objections to Exhibit 44F, Plaintiff's
unsuccessful attempts to propound interrogatories on Dr. Pappas, Plaintiff's request to depose
Dr. Pappas, and the denial of the request.  Doc. 11-2 at 51–52 (R. 50-51).  The ALJ confirmed
he was aware of the objections and explained that Dr. Pappas' opinions were only "considered in
light of the longitudinal history, the objective evidence, and the claimant's subjective complaints,
and [were] given weight in [the] decision appropriate to [their] consistency with the evidence."
Id. at 52 (R. 51).  Later in the decision, the ALJ discussed three specific findings from Dr.

---

[1]     At the May 10, 2017 hearing, the ALJ also proposed hiring a medical expert to review the record
and provide an opinion and then allowing Plaintiff's counsel to depose the expert.  Doc. 11-3 at 8 (R.
102).  Plaintiff's counsel rejected that proposal.  Id.  No medical expert was ever hired.

[2]     Plaintiff's counsel provided 45 proposed interrogatories.  Doc. 11-15 at 48–53 (R. 1049–54)
(complete copy of interrogatories).  The ALJ observed the number of interrogatories was "a little bit
onerous" and directed Plaintiff's counsel to pare down the proposal to 10 or 12.  Doc. 11-3 at 8–9 (R.
104-05).  Plaintiff's counsel objected to paring down the requests, and the ALJ relented and agreed to
send the complete set of 45 interrogatories.  Id.

[3]     The record demonstrates Dr. Pappas received the interrogatories but declined to respond,
"because he put all of the info in the previous packet."  Doc. 11-10 at 62 (R. 588).

Pappas regarding Plaintiff's abilities.   First, Dr. Pappas concluded Plaintiff could continuously lift up to 20 pounds; frequently lift up to 50 pounds; frequently carry 20 pounds; and occasionally carry 50 pounds.   Id. at 62 (R. 61).   The ALJ did not give significant weight to these findings, as they were not consistent with his own impression of Plaintiff's limitations and other medical evidence.   Id.   Next, Dr. Pappas concluded Plaintiff could sit for eight hours at one time, stand for three hours, walk for two hours in one workday, and that he could perform continuous reaching, handling, fingering, feeling, pushing, and pulling.   Id.   The ALJ similarly did not give this conclusion significant weight, because the opinion was inconsistent with the ALJ's own impressions of Plaintiff's limitations, based upon other evidence.   Id.   Finally, the ALJ discussed Dr. Pappas' finding that Plaintiff could occasionally climb stairs and ramps, stoop, kneel, and crouch and never climb ladders or scaffolds, balance, or crawl.   Id. at 63 (R. 62).   The ALJ assigned significant weight to this opinion, concluding it was consistent with other objective evidence in the record.   Id.

Plaintiff argues the ALJ erred by admitting and giving any weight to Dr. Pappas' opinions, while, at the same time, not requiring Dr. Pappas to answer the propounded interrogatories or granting his request to subpoena Dr. Pappas.   Doc. 17 at 19–23.   Plaintiff argues his rights to due process and a full and fair hearing were violated when the ALJ considered Dr. Pappas' opinions but did not require Dr. Pappas to be questioned about those opinions.   Id.   Plaintiff further argues the Social Security Administration's Hearing, Litigation, and Appeals Manual ("HALLEX") § I-2-6-60b provides claimants the right to question witnesses.   Id.   In support of his argument, Plaintiff contends Dr. Pappas' opinions and conclusions in Exhibit 44F are internally inconsistent.   Id. at 20–21.   Plaintiff emphasizes Dr. Pappas concluded that Plaintiff had a "significant impairment due to severe polyneuropathy

affecting gait and balance," doc. 11-14 at 60 (R. 998), but also stated in the Medical Source Statement that Plaintiff could lift up to 20 pounds continuously, lift up to 50 pounds frequently, carry up to 20 pounds frequently, carry up to 50 pounds occasionally, and engage in continuous reaching, handling, fingering, feeling, pushing, and pulling (tasks that Plaintiff characterizes as constituting medium duty work), id. at 51–56 (R. 989–94).   Doc. 17 at 20–21.   Indeed, correspondence from Plaintiff's counsel earlier in the case demonstrates that Plaintiff's primary concern was that Dr. Pappas' conclusions regarding Plaintiff's ability to lift and carry were inconsistent with the conclusion that had severe polyneuropathy.   Doc. 11-9 at 110 (R. 522) ("[Dr. Pappas] gives an assessment that [Plaintiff] has a significant impairment due to severe polyneuropathy affecting his gait and balance, but then purports to fill out a medical source statement saying [Plaintiff] can perform medium duty work in terms of lifting and carrying when he requires a hand-held device for ambulation.").

Defendant, on the other hand, argues the ALJ had an ordinary duty (as opposed to a heightened duty) to develop the record, and he was not required to seek additional medical evidence because the record contained sufficient evidence for him to make an informed decision. Doc. 18 at 6.   Defendant argues Plaintiff had no absolute right to cross-examine Dr. Pappas.   Id. at 8.   Defendant also argues that, even where there may be a violation of due process, there must be a showing of prejudice from that violation to warrant remand, and Plaintiff has not shown any prejudice.   Id. at 6, 9–10.   Defendant further argues the governing Regulations establish the decision to issue a subpoena is soundly within the ALJ's discretion.   Id. at 9.

To resolve this issue, the Court must determine if the ALJ committed error by denying Plaintiff's requests to subpoena Dr. Pappas and by failing to compel Dr. Pappas to answer Plaintiff's interrogatories, and, if error was committed, whether that error require remand.   As a

starting point, the determination of whether cross-examination of a witness is warranted is within the discretion of the ALJ.   Martz v. Comm'r, Soc. Sec. Admin., 649 F. App'x 948, 962 (11th Cir. 2016).   This is confirmed by and is consistent with the Social Security Regulations governing hearings before administrative law judges and HALLEX.   Id. (describing 20 C.F.R. § 404.950(d)(1) and HALLEX, Vol. I, § I-2-5-30); see also HALLEX, Vol. I, § I-2-5-78 (explaining that the ALJ may issue a subpoena "[w]hen it is reasonably necessary for the full presentation of a case" and establishing procedures for the denial of subpoena requests). Therefore, the ALJ in this case had discretion, under the governing Regulations and the HALLEX, to determine whether cross-examination of Dr. Pappas was warranted.   The Court must next address whether procedural due process required the ALJ permit cross-examination, and, therefore, whether the ALJ abused his discretion.[4]

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"   Tagle v. Astrue, 279 F. App'x 827, 829 (11th Cir. 2008) (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).   A claimant is also entitled to a full and fair hearing.   Martz, 649 F. App'x at 962.   An ALJ has a basic duty to develop a full and fair record, and this duty is greater for an unrepresented claimant.   Santos v. Soc. Sec. Admin., Comm'r, 731 F. App'x 848, 854 (11th Cir. 2018) (citing Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003)).

---

[4]     Plaintiff relies exclusively on Richardson v. Perales, 402 U.S. 389 (1971), for his contention the ALJ violated his due process rights by denying his request to subpoena Dr. Pappas.   Doc. 17 at 20; Doc. 23 at 19.   At least one Circuit has construed Richardson to establish an "absolute right," in some circumstances, to cross-examine examining physicians (using the term "absolute right" to mean that the ALJ has no discretion to deny a request to subpoena an examining physician who submits a report).   See Barrett v. Berryhill, 906 F.3d 340, 342 (5th Cir. 2018), as revised, Oct. 16, 2018.   However, nearly every other Circuit—and, importantly, the Eleventh Circuit—has concluded there is no such absolute right, and the ALJ retains discretion to grant or deny requests for cross-examination.   Id. (collecting cases).

Regarding due process protections in this context, the Eleventh Circuit has observed that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands."  Martz, 649 F. App'x at 963 (citing Mathews, 424 U.S. at 334).   The Eleventh Circuit concluded that a claimant's due process rights are violated where the ALJ "substantially relies" on a post hearing medical report, but the claimant was denied an opportunity to cross-examine the examining physician.  Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 885 (11th Cir. 1990).   Conversely, the Eleventh Circuit concluded there is no violation of a claimant's due process rights in a denial of a request to cross-examine, where the examining physician provided his report in advance of the ALJ hearing, the claimant had an opportunity to challenge and rebut the physician's findings before the ALJ issued his decision, and the claimant submitted interrogatories to the physician and received responses.  Martz, 649 F. App'x at 963 ("[N]othing in Demenech suggests that its holding applies with equal force to medical reports submitted prior to the administrative hearing . . . .");  see also Santos, 731 F. App'x at 854 (finding no due process violation where ALJ implicitly rejected request to cross-examine a consulting examiner who filed a pre-hearing report, given that the ALJ assured the claimant he would consider claimant's criticism of the examiner's report into account and offered claimant an opportunity to submit written interrogatories).   Importantly, where a claimant asserts the ALJ has violated due process by denying a request to cross-examine, the claimant must also show prejudice to warrant reversal.  Santos, 731 F. App'x at 854 (citing Graham v. Apfel, 129 F.3d 1420, 1422–23 (11th Cir. 1997)).

The record in this case demonstrates ALJ Petersen did not violate Plaintiff's due process rights in denying Plaintiff's request to subpoena Dr. Pappas or compel Dr. Pappas to answer the propounded interrogatories.   First, Plaintiff was represented by counsel at all times, and,

therefore, the ALJ had only an ordinary (as opposed to heightened) duty to develop the record. Second, Dr. Pappas' report was issued November 22, 2016, well before the interim ALJ hearing (on May 10, 2017), the final ALJ hearing (on February 14, 2018), and when the ALJ issued his decision (on April 16, 2018).   Therefore, the primary concern expressed in Demenech (i.e., denial of the opportunity to cross-examine an examining physician who provided a post-hearing report) is not present here.   Indeed, Plaintiff had ample opportunity to attack and dispute Dr. Pappas' opinions in his report and did so at both the May 10, 2017 and February 14, 2018 hearings.   Third, the Eleventh Circuit has explained that cross-examination is most needed where the ALJ "substantially relies" on the examining physician's report, but the ALJ in this case did not substantially rely on Dr. Pappas' report.   See Demenech, 913 F.2d at 885.   At the February 14, 2018 hearing, the ALJ explained he viewed Dr. Pappas as not an essential witness, noting that Dr. Pappas' consultative exam was likely no longer current or accurate, given the amount of time that had passed since Dr. Pappas performed the exam.   Doc. 11-2 at 83–84 (R. 82–83).   The ALJ confirmed his view that Dr. Pappas was not an essential witness in his decision and further explained that he was only giving weight to Dr. Pappas' opinions to the extent the opinions were consistent with the evidence.[5]   Id. at 51–52 (R. 50–51).   The ALJ also expressly rejected Dr. Pappas' opinions regarding Plaintiff's lift and carry abilities, his abilities to sit and stand during the workday, and his abilities to engage in continuous reaching, handling, fingering, feeling, and pushing and pulling—refusing to give any of these opinions any significant weight.   Id. at 62–63 (R. 61–62).   These facts, taken together, demonstrate that the ALJ did not substantially rely on the opinions of Dr. Pappas, and, therefore, he committed no

---

[5]   It is also clear the ALJ had already rejected Dr. Pappas' opinions regarding Plaintiff's abilities to lift and carry objects, as well as the opinions regarding Plaintiff's ability to stand or walk during the workday, as of the February 14, 2018 hearing.   Doc. 11-2 at 95–96 (R. 94–95) (providing hypothetical to vocational expert involving a far more limited abilities than Dr. Pappas suggested for Plaintiff).

error in failing to require Dr. Pappas to answer the propounded interrogatories or denying

Plaintiff's request to subpoena Dr. Pappas

The Court, however, acknowledges two facts which support Plaintiff's position.   First,

Dr. Pappas' refusal to answer the propounded interrogatories militates in favor of—though only

slightly—finding the ALJ erred in failing to grant Plaintiff's request to subpoena Dr. Pappas.   In

cases considering similar challenges, the Eleventh Circuit has suggested the availability of

interrogatories to an examining physician diminishes any argument that due process requires oral

cross-examination of the physician.   See, e.g., Martz, 649 F. App'x at 963; Santos, 731 F. App'x

at 854.   However, Plaintiff has not cited any authority—and the Court is aware of none—that

supports the theory that a physician's refusal to answer interrogatories compels an ALJ to

subpoena that physician for oral cross-examination.   Moreover, the circumstances of this case

(particularly, the ALJ's minimal reliance on Dr. Pappas' opinions) does not support such a

conclusion.

Second, the Court notes the ALJ assigned significant weight to one of Dr. Pappas'

opinions: that Plaintiff could occasionally climb stairs and ramps, stoop, kneel, and crouch but

never climb ladders or scaffolds, balance, or crawl.   Doc. 11-2 at 63 (R. 60).   But the ALJ only

assigned significant weight to this opinion because the conclusions were already supported by

and consistent with the other medical evidence.   Id.   Notably, Plaintiff's primary challenges to

Dr. Pappas did not relate to this aspect of his opinions.   See Doc. 11-9 at 110 (R. 522) ("[Dr.

Pappas] gives an assessment that [Plaintiff] has a significant impairment due to severe

polyneuropathy affecting his gait and balance, but then purports to fill out a medical source

statement saying [Plaintiff] can perform medium duty work in terms of lifting and carrying when

he requires a hand-held device for ambulation.").   The ALJ gave only this portion of Dr.

Pappas' opinions significant weight because it was consistent with other medical evidence in the record, and, therefore, this does not undermine my conclusion that the ALJ did not "substantially rely" on Dr. Pappas' opinion.

Even if the ALJ had substantially relied on Dr. Pappas' opinions and erred in failing to require Dr. Pappas to answer the propounded interrogatories or denying Plaintiff's request to subpoena Dr. Pappas, Plaintiff would need to demonstrate prejudice in order to prove his due process rights have been violated to such a degree that the case must be remanded.  Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) ("[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.").   As explained below, Plaintiff has not shown he was prejudiced.

Plaintiff takes issues with certain aspects of Dr. Pappas' opinions and conclusions.   First, Plaintiff contends Dr. Pappas failed to fully answer certain questions on the medical source statement form.   Doc. 17 at 19.   Plaintiff has not shown he was prejudiced by an inability to cross-examine Dr. Pappas about these non-answers; there is no indication that Dr. Pappas' non-answers on the form played any role in the ALJ's determination.   Next, Plaintiff asserts Dr. Pappas inconsistently stated in his report that Plaintiff had a significant impairment due to severe polyneuropathy that affected both his gait and balance but stated in the medical source statement that Plaintiff could perform tasks equivalent to medium duty work (i.e., Plaintiff's lift and carry abilities, his sit/stand abilities, and his ability to perform continuous reaching, handling, fingering, feeling, and pushing and pulling).   Doc. 11-2 at 62–63 (R. 61–62).   But the ALJ agreed with Plaintiff and resolved these inconsistencies in Plaintiff's favor.   Specifically, the ALJ concluded Plaintiff's neuropathy and shoulder condition would limit all of these activities

during the workday and refused to give Dr. Pappas's opinions on these topics any significant weight.   Thus, Plaintiff cannot demonstrate he was prejudiced by the inability to cross-examine Dr. Pappas on these issues.

The ALJ did give significant weight to Dr. Pappas' conclusion that Plaintiff could occasionally climb stars and ramps, stoop, kneel, and crouch but never climb ladders or scaffolds, balance, or crawl.   Id.   The ALJ explained he gave this portion of Dr. Pappas' opinions significant weigh because the "opinions are consistent with the objective evidence," and that all of Dr. Pappas' opinions were considered in light of Plaintiff's longitudinal history and Plaintiff's subjective complaints and were only given weight appropriate to the opinions' consistency with the evidence.   Id. at 50, 61.   Plaintiff has not demonstrated that cross-examination of Dr. Pappas on this opinion could have altered the ALJ's analysis in any way, and, therefore, Plaintiff fails to show any prejudice.[6]   Accordingly, this enumeration of error is without merit.

## V.      Whether the ALJ Properly Weighed the Opinions of Dr. Nimi Patel

Plaintiff argues ALJ Petersen erred in discounting the opinions of Plaintiff's long-time treating neurologist, Dr. Nimi Patel.   Doc. 17 at 23.   Medical opinions are statements from physicians or other medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnoses, what the applicant can still do despite the impairments, and any physical or mental restrictions.   20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).   The Social Security Regulations provide guidelines for an ALJ to employ when

---

[6]      Plaintiff suggests, without citation to authority, that the mere fact the ALJ rendered an unfavorable decision demonstrates prejudice.   Doc. 22 at 3–4.   However, if that were the case, the prejudice requirement would be rendered meaningless.   Plaintiff must show the cross-examination he sought would have potentially made a difference in the outcome before the ALJ.   Plaintiff has not made that showing here.

evaluating medical evidence.   20 C.F.R. §§ 404.1527, 416.927.   When determining the weight

to give a physician's opinion, an ALJ may consider numerous factors, including the physician's

specialization, whether the physician examined the claimant, whether the physician treated the

claimant, the length of the treating relationship and the frequency of examination, the evidence

the physician presents to support his or her opinion, and whether the physician's opinion is

consistent with the record as a whole.   20 C.F.R. §§ 404.1527(c), 416.927(c).

 An ALJ may discount or reject the opinion of any doctor if the opinion is not

accompanied by objective medical evidence or is wholly conclusory or is inconsistent with the

doctor's treatment notes or other record evidence.   20 C.F.R. §§ 404.1527(c)(3), (c)(4),

416.927(c)(3), (c)(4); Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 823 (11th Cir. 2015);

Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159–60 (11th Cir. 2004); Phillips v.

Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004).   However, an ALJ who discounts a treating

physician's opinion must give good reasons for doing so.   20 C.F.R. §§ 404.1527(c)(2),

416.927(c); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).   In

determining whether an ALJ gave proper weight to a physician's opinion, a court "will not

second guess the ALJ about the weight the treating physician's opinion deserves so long as he

articulates a specific justification for it."   Hunter, 808 F.3d at 818.

 In his determination, the ALJ referred to several opinions from Dr. Patel.   In October

2016, Dr. Patel completed a Medical Assessment of Plaintiff's physical abilities indicating

Plaintiff was limited to less than a full range of sedentary activity.   Doc. 11-4 at 30–32 (R. 968–

70).   Dr. Patel opined Plaintiff had a number of limitations: he needed to lie down one to two

times a day; he could lift less than ten pounds occasionally, with no frequent lifting; he could

stand and walk for less than two hours during an eight-hour workday; he required the use of a

hand held assistive device for walking; he could sit for less than six hours during an eight-hour workday; he had limited use of his upper and lower extremities for pushing and pulling; and he could not climb, balance, kneel, crouch, crawl, or stoop.   Id.   Dr. Patel also concluded Plaintiff could occasionally reach, handle, finger, and feel, and he would miss more than three days of work a month due to his conditions or treatment.   Id.

The ALJ noted a number of inconsistencies within Dr. Patel's 2016 findings, and, accordingly, gave inconsistent opinions less than significant weight.   See Crawford, 363 F.3d at 1159–60 (treating physician's opinions can be properly discounted when they contain inconsistencies); Edwards v. Sullivan, 937 F.2d 580, 583–84 (11th Cir. 1991) (finding good cause existed where to discount the treating physician where his opinion was contradicted by other notations in his record).   The ALJ noted Dr. Patel's observations that Plaintiff continued to walk with a cane and exhibited a steady gait.   Doc. 11-2 at 63 (R. 62).   The ALJ found these observations inconsistent with Dr. Patel's finding that Plaintiff displayed normal strength, with no evidence of atrophy or abnormal movements.   Id.   The ALJ also noted Dr. Patel's neurological examinations, which showed normal sensation and coordination, an intact memory, and normal attention and concentration.   Id.   The ALJ found these observations inconsistent with Plaintiff's allegations of the frequency, severity, and limiting effects of his neuropathy.   Id.

Plaintiff returned to Dr. Patel in January 2018 with complaints about pain in his neck and back.   Doc. 11-16 at 44–51 (R. 1127–34).   Plaintiff also reported both of his hands were numb, he had intermittent falls, and that he had cramps in his feet.   Id. at 44 (R. 1132).   The ALJ found Dr. Patel's January 2018 treatment notes contained several inconsistencies.   Doc. 11-2 at 64 (R. 63).   The ALJ found the notes simultaneously stated Plaintiff had frequent falls, intermittent falls, and that he had not fallen since he started using a cane.   Id. (citing Doc. 11-16

at 44, 49–50 (R. 1127, 1132–33)).   Next, the ALJ referenced the inconsistency in Dr. Patel's

notes that Plaintiff reported left foot cramps at night, and in the same notes, that Plaintiff

experienced cramps in both feet.   Id. (citing Doc. 11-16 at 49 (R. 1132)).   The ALJ also found

Dr. Patel's assessment of facial weakness was not supported by any examination evidence or

notes.   Id. (citing Doc. 11-16 at 50 (R. 1133)).   Dr. Patel's treatment notes state Plaintiff

claimed the drugs Baclofen and Lyrica were not helping; however, this is inconsistent with

Plaintiff's claims to other medical providers.   Id. (contrasting Doc. 11-16 at 49 (R. 1132), with

Doc. 11-16 at 3 (R. 1086)).   The ALJ also noted Dr. Patel observed some muscle atrophy of

Plaintiff's hands but did not report any grip or pinch weakness.   Id. (citing Doc. 11-16 at 49 (R.

1132)).   Finally, as the ALJ stated, Dr. Patel did not report any loss of sensation or problems

with coordination, which is inconsistent with Plaintiff's statements and Dr. Patel's opinions in

his medical source statement.   Id.

Also in January 2018, Dr. Patel completed a narrative statement where she concluded

Plaintiff should not lift more than ten pounds and must use a cane.   Doc. 11-16 at 63 (R. 1146).

Dr. Patel also concluded Plaintiff could not stand more than two hours total during a typical

workday and he would require frequent breaks.   Id.   Dr. Patel further concluded Plaintiff had

limitations for pushing and pulling with his upper and lower extremities.   Id.   The AJL found

these opinions by Dr. Patel were too vague to be given significant weight.   Doc. 11-2 at 64 (R.

63).

Dr. Patel also concluded in January 2018 that Plaintiff was disabled.   Id.   ALJ Petersen

correctly noted the determination of whether Plaintiff was disabled is a decision reserved for the

Commissioner.   Doc. 11-2 at 64 (R. 63); see 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p;

Adams v. Comm'r, 586 F. App'x 531, 533 (11th Cir. 2014); Denomme v. Comm'r, Soc. Sec.

Admin, 518 F. App'x 875, 877 (11th Cir. 2013); Bell v. Bowen, 796 F.2d 1350, 1353–54 (11th Cir. 1986).   However, the ALJ found Dr. Patel's general opinion that Plaintiff could perform a range of sedentary exertional work was consistent with the evidence of record and his residual functional capacity determination.[7]   Id. at 64–65 (R. 63–64).

In addition to internal inconsistencies in Dr. Patel's opinions, inconsistency with other medical evidence of record also supports the ALJ's decision to assign partial weight to Dr. Patel's opinions.   In December 2014, Dr. Mukesh Agarwal performed a consultative evaluation. Doc. 11-11 at 57–64 (R. 673–80).   During this exam, Plaintiff reported his blood sugar levels had recently improved.   Id.   Plaintiff also complained of numbness and burning in his feet but denied diabetic foot ulcers or any other problems except for diabetic neuropathy.   Id. at 62 (R. 678).   Dr. Agarwal noted Plaintiff could get in and out of a chair, get on and off the examination table, walk with only slight difficulty, and did not use an assistive device.   Id. at 64 (R. 680). Dr. Agrawal found no evidence of neuropathy or loss of grip or muscle strength in Plaintiff's upper extremities.   Id. 57–64 (R. 673–80).   Dr. Agarwal concluded that Plaintiff could reach, push, pull, and grasp, and with some difficulty, carry out the activities of daily living.   Id.   He opined Plaintiff could bend and stoop for very short periods but could not crawl.   Id.   Dr. Agrawal also opined Plaintiff could sort and handle papers and place them in a filing cabinet at waist level but indicated he would have trouble with above-waist level reaching with the left upper extremity.   Id.   Dr. Agarwal concluded Plaintiff could sit, stand, and walk up to four

[7]   To the extent Plaintiff argues the ALJ failed to identify any medical opinion on which to base his decision that Plaintiff did not meet or medically equal Listing 11.14, doc. 17 at 23, that argument fails. The ALJ does not have to prove Plaintiff did not meet a Listing.   Plaintiff bears the burden of establishing that he has an impairment or combination of impairments the meets or equals a Listing. Davenport v. Astrue, 403 F. App'x 352, 353 (11th Cir. 2010) (citing Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991).   Moreover, the ALJ provided a detailed explanation for his conclusion that Plaintiff did not meet Listing 11.14, including references to the medical record.   Doc. 11-2 at 55 (R. 54).

hours a day with weights of less than 15 pounds.   Id.   The ALJ assigned significant weight to these opinions, as he concluded they were consistent with his observations and other objective medical evidence.   Doc. 11-2 at 58–59 (R. 57–58).

As the ALJ noted, Dr. Patel's opinions are often internally inconsistent, or in some cases, vague.   Dr. Patel's opinions are also inconsistent with other medical evidence on the record, such as the opinions of Dr. Agarwal.   These inconsistencies support the finding that the ALJ had good cause to discount the opinions of a treating physician.   Indeed, the ALJ gave this as his reason for doing so.   The ALJ provided a good cause to discount the opinions of Dr. Patel, and thus, this enumeration is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner.   I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.   Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.   Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).   A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.   Objections

not meeting the specificity requirement set out above will not be considered by a District Judge.

A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.   Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.   The Court **DIRECTS** the Clerk of

Court to serve a copy of this Report and Recommendation upon the parties.

       **SO ORDERED** and **REPORTED and RECOMMENDED**, this 4th day of March,

2020.


BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA